**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN D. LIGHT,** | : | **CIVIL ACTION NO. 1:03-CV-0725** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CHARLES B. HAWS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Presently before the court is defendants' motion for summary judgment on

the claims of plaintiff John D. Light ("Light"), brought pursuant to 42 U.S.C. § 1983

for monetary damages to compensate for allegedly unlawful searches and

retaliatory conduct by officials of the Pennsylvania Department of Environmental

Protection ("DEP"), and for a declaration that several provisions of Pennsylvania's

Solid Waste Management Act, 35 PA. CONS. STAT. §§ 6018.101–.1003 ("SWMA"), are

unconstitutionally vague.  For the reasons that follow, the motion will be granted

in part and denied in part.

## I.    **Statement of Facts**[1]

A former dairy farmer, Light now owns and operates almost 200 apartment

units scattered throughout south-central Pennsylvania.  (Doc. 64, Ex. 1 at 1; Doc.

---

[1]  In accordance with the standard of review for a motion for summary
judgment, the court will present the facts in the light most favorable to plaintiff.
See infra Part II.  The court notes that recitation of these facts was hindered by
defendants' failure to comply with Local Rule 56.1 (see Doc. 39).  See L.R. 56.1
("Statements of material facts in support of . . . a motion shall include references to
the parts of the record that support the statements.").

64, Ex. 4 at 7, 10-11).  He resides on a farm in Lebanon County, upon which is situated a garage, a barn, several trailers and mobile homes, various pieces of heavy equipment, and a chicken coop.  (Doc. 64, Ex. 1 at 1, 2; Doc. 64, Ex. 4 at 201).  Within the garage and barn Light stores auto parts, tools, building materials, appliances, and furnishings for his apartments.  (Doc. 64, Ex. 4 at 201-04; Doc. 64, Ex. 1 at 1).  The trailers contain various items abandoned by former tenants, as well as old tires to be reused or sold to consignment shops.  (Doc. 64, Ex. 1 at 2; Doc. 64, Ex. 4 at 125, 191, 193).  The heavy equipment stored on Light's property includes trucks, tractors, log skidders, and farming equipment.  (Doc. 64, Ex. 1 at 2).  Outside, Light stores sheet metal, lumber, pipe, window frames, and firewood, as well as metal drums which he either resells or uses to store gasoline, oil, and antifreeze for his equipment.  (Doc. 64, Ex. 1 at 1-4).  Most of Light's possessions were purchased from consignment sales or removed from his rental properties, and are intended for refurbishment and reuse, if possible, in his apartment units.  (Doc. 64, Ex. 4 at 9-10, 201-02; Doc. 64, Ex. 1 at 1-2).

Light's property has garnered the attention of local and state authorities in recent years.  In January 1998, officials from DEP visited Light's farm in response to a citizen complaint, and requested access to the property for an inspection.  (Doc. 64, Ex. 2 at 6-8, 18; Doc. 44, Attach. 2 ¶ 3).  Light initially refused, but acquiesced to the search when the officials said that, if he persisted, they would obtain a search warrant and then fine Light for obstructing their investigation.  (Doc. 64, Ex. 2 at 8,

13-18; Doc. 44, Attach. 2 ¶ 4).  Light was subsequently cited for unlawfully possessing and storing "waste" on his property.  (Doc. 64, Ex. 2 at 8, 20).

Two years later, DEP investigator Robert Belfanti ("Belfanti") visited Light's farm and informed him that he was in violation of various regulations.  (Doc. 64, Ex. 4 at 44-45; Doc. 64, Ex. 3 at 15; Doc. 64, Ex. 9 at 18).  Light subsequently received a citation related to those violations, and was fined $1,000.  (Doc. 64, Ex. 4 at 42, 48-49).  He appealed the fine to a state court and succeeded in having it reduced to $300.  (Doc. 64, Ex. 4 at 50-51).  Belfanti and another DEP official, Anthony Rathfon ("Rathfon"), were present during the state-court proceeding and, according to Light, were extremely upset at the reduction.  (Doc. 64, Ex. 4 at 52-53, 59-60).  They purportedly followed Light from the courthouse back to his farm, entered Light's barn without permission, and declared the majority of the barn's content waste, demanding that it be removed.  (Doc. 64, Ex. 4 at 54-55, 170-71).

In November 2001 Light's garage caught fire.  DEP was contacted when firefighters at the scene observed metal drums near the flames.  (Doc. 64, Ex. 1 at 4-5; Doc. 64, Ex. 2 at 40-42, 60; Doc. 64, Ex. 4 at 74-75).  A DEP official arrived at the fire and was able to confirm that the drums did not pose an immediate risk to the environment.  (Doc. 64, Ex. 2 at 27, 43).  However, when interviewed by a local television news crew, the official purportedly stated that he had observed violations while on the property, and that Light was a "packrat" with whom DEP was having problems.  (Doc. 64, Ex. 2 at 23; Doc. 64, Ex. 4 at 83).  Although Light declined to provide an interview on camera, he relayed to a reporter that he was

working with DEP and that everything was "okay." (Doc. 64, Ex. 4 at 77-78). The story was later broadcast and, although Light could be seen speaking with others, the conversation itself could not be heard. (Doc. 64, Ex. 4 at 76-77).

While at the fire, the DEP official was told by an unknown individual that Light was storing tires and other objects on the southern parcel of the farm, across the street from Light's garage. (Doc. 64, Ex. 2 at 32-33, 37-38; Doc. 44, Attach. 2 ¶ 8). This information was subsequently relayed to Belfanti and Rathfon. (Doc. 64, Ex. 2 at 27, 43; Doc. 44, Attach. 2 ¶ 9). The following morning, Light observed Belfanti and another DEP official on the farm assessing the fire damage. (Doc. 64, Ex. 4 at 85, 212; Doc. 64, Ex. 2 at 37-39; Doc. 44, Attach. 2 ¶ 9). After looking at the fire-damaged garage, the officials advised Light that they had received a complaint of tires being stored across the street, and requested entry onto that part of the property. (Doc. 64, Ex. 2 at 37-39; Doc. 64, Ex. 4 at 91-92, 209-210). Light refused, and pointed to the "no trespassing" signs posted on his land. (Doc. 64, Ex. 4 at 91-92, 107; Doc. 44, Attach. 5 ¶ 4,7; Doc. 44, Attach. 2 ¶ 10; Doc. 44, Attach. 3 ¶ 11). Belfanti purportedly responded by warning Light that, if they were forced to obtain a search warrant, Light would be fined $2,000. (Doc. 64, Ex. 4 at 96, 105). Light again refused, and the officials left. (Doc. 64, Ex. 2 at 34).

The DEP officials returned several hours later with a search warrant.[2]  (Doc. 64, Ex. 4 at 108, 115-16).  Construction waste, farming supplies, several thousand stacked tires, and piles of scrap metal overgrown with brush were found on the property.  (Doc. 64, Ex. 4 at 124-128; Doc. 64, Ex. 2 at 46-47).  In a subsequent meeting with Belfanti, Rathfon, and DEP investigator Stephen Bartos ("Bartos"), Light was allegedly advised that he would be fined $2,000 under the SWMA for making them obtain a search warrant and that DEP was going to "get him."  (Doc. 64, Ex. 4 at 124-28, 134, 136-37; Doc. 64, Ex. 9 at 18).  Light received a DEP compliance order, purportedly dated two months prior to his receipt, demanding that he clean up the farm within ninety days.  (Doc. 64, Ex. 4 at 136-38, 153).  According to Light, he attempted to negotiate the fine, but was told that there would be no negotiating, that penalties were going to increase from that point forward, and that fines could be levied at $25,000 per day if he did not comply.  (Doc. 64, Ex. 4 at 139-40).  Defendants aver that they offered to limit the penalty to $2,000 if Light would sign a consent assessment form.  (Doc. 44, Attach. 4 ¶¶ 6-7).  However, Light refused to sign the agreement, and on February 22, 2002, Bartos

---

[2]  Defendants contend that the affidavit of probable cause for the warrant to issue proffered violations that were in plain view.  (Doc. 44, Attach. 3 ¶ 12).  Light argues that defendants used violations in plain view on the north side of the property to obtain a search warrant for the south side of the property, where the items discovered were secluded in woods and not discernible from the road.  (See Doc. 64, Ex. 1 at 5; Doc. 64, Ex. 4 at 106-07, 214-16).  The affidavit is not part of the record.

assessed a penalty of $6,000 upon Light for refusing DEP officials access to his farm without a warrant.  (Doc. 64, Ex. 4 at 163-68; Doc. 44, Attach. 4 ¶ 3, 10).

Light also received a DEP compliance order to clean up the items that were found on his property.  He filed an appeal from this order with the Environmental Hearing Board ("EHB").  (Doc. 64, Ex. 4 at 118-20, 122; Doc. 44, Attach. 6 ¶ 3). Attorney Charles B. Haws ("Haws") represented DEP during these enforcement proceedings.  (Doc. 44, Attach. 6 ¶¶ 4, 7-8).  Following one judicial proceeding, Light's counsel purportedly provided Haws with a draft of the complaint which he intended to file in this case.  After reviewing the draft complaint, Haws allegedly became very agitated and threatened Light and his counsel with further "harassment," purportedly telling Light to "just wait and see."[3]  (Doc. 1 ¶¶ 51-55; Doc. 64, Ex. 1 at 8; Doc. 64, Ex. 9 at 189-90).  Light alleges that DEP has since renewed its effort to harass and intimidate him, and that he complies with DEP directives only to have officials revisit his farm and issue new directives.  (Doc. 64, Ex. 1 at 9; Doc. 64, Ex. 4 at 98-99, 177, 189-90).

The instant action was commenced in April 2003, and an amended complaint was filed eight months later, naming as defendants Belfanti, Rathfon, Bartos, Haws, the Secretary of the Department of Environmental Protection, and the

---

[3]  The EHB subsequently dismissed the appeal for failure to comply with discovery orders.  (Doc. 44, Attach. 6 ¶ 6).  Upon learning that Light was not adhering to the compliance order, Haws filed a petition for enforcement in state court.  Light was subsequently held in contempt of court and incarcerated for failing to comply.  (Doc. 44, Attach. 6 ¶¶ 23-25).

Governor of the Commonwealth of Pennsylvania.  (See Docs. 1, 21).  The amended complaint alleges violations of the state constitution and the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, and seeks monetary damages and a declaration that provisions of the Solid Waste Management Act are unconstitutionally vague.

## II.   Standard of Review

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury."  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 314 (M.D. Pa. 2004).  Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim.  FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Township, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), aff'd, 94 Fed. Appx. 76 (3d Cir. 2004).  "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."  Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)). Only if this burden is met can the cause of action proceed.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see FED. R. CIV. P. 56(c), (e).

III.   **Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law by state officials.  See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.  Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Satisfaction of these elements, however, does not guarantee recovery. Certain officials, including police officers and other state actors who perform "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known."  Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Wilson v. Layne, 526 U.S. 603, 609 (1999).  This doctrine, known as "qualified immunity," provides not only a defense to liability, but "immunity from suit."  Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  To gain

8

the protection of the doctrine, the defendant must show either (1) that the plaintiff has not demonstrated "a deprivation of an actual constitutional right" or (2) that the right at issue was not "clearly established at the time of the alleged violation." Conn v. Gabbert, 526 U.S. 286, 290 (1999); see Kopec v. Tate, 361 F.3d 772, 775-76 (3d Cir. 2004).

When immunity is raised at the summary judgment stage, the court's analysis of the merits of the claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for purposes of immunity.  See Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Wright v. City of Philadelphia, 409 F.3d 595, 599-600 (3d Cir. 2005); Russoli v. Salisbury Township, 126 F. Supp. 2d 821, 838-41 (E.D. Pa. 2000); see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant viewed in a light most favorable to the plaintiff.").  Proceeding under this framework, the court will examine each claim to determine, first, whether plaintiff has offered sufficient evidence of a deprivation of a constitutional right and, second, whether the right at issue was clearly established.

### A.    Unlawful Search and Seizure

Issuance of a warrant is normally a constitutional prerequisite to a valid search or seizure of private property.  New York v. Burger, 482 U.S. 691, 699-704 (1987); see also Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) ("It is well

settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable subject only to a few specifically established and well-delineated exceptions.").  The warrant requirement is relaxed when officials act to enforce regulatory provisions designed to protect the public at large, rather than to advance a criminal prosecution.  See Camara v. Mun. Court, 387 U.S. 523, 535-41 (1967); see also Marshall v. Barlow's, Inc., 436 U.S. 307, 321 (1978) ("The reasonableness of a warrantless search . . . will depend upon . . . specific enforcement needs . . . .").  Hence, an exception to the warrant requirement exists for searches of closely regulated industries when conducted pursuant to an administrative inspection scheme.  Shoemaker v. Handel, 795 F.2d 1136, 1142 (3d Cir. 1986); Showers v. Spangler, 182 F.3d 165, 172 (3d Cir. 1999).  This exception is based upon the premise that heavily regulated businesses have "a long tradition of close government supervision, of which any person who chooses to enter such a business must already be aware."  Marshall, 436 U.S. at 313; see also Almeida-Sanchez v. United States, 413 U.S. 266, 271 (1973) ("The businessman in a regulated industry in effect consents to the restrictions placed upon him.").

In the case *sub judice*, defendants' warrantless inspections were conducted pursuant to the Solid Waste Management Act, 35 PA. CONS. STAT. §§ 6018.101–.1003. This regulatory scheme was enacted to, in part, "protect the public health, safety and welfare from the short and long term dangers of transportation, processing, treatment, storage, and disposal of all wastes."  Id. § 6018.102.  Those charged with

10

enforcement of the statute are empowered to "[e]nter any building, property, premises or place where solid waste is generated, stored, processed, treated, beneficially used or disposed . . . ."  Id. § 6018.608; 25 PA. CODE § 271.421(a)(3).  The Act expressly authorizes warrantless searches and makes it unlawful to "refuse, hinder, obstruct, delay, or threaten" an official's "entry and inspection under any circumstances."  35 PA. CONS. STAT. §§ 6018.608–.610.

While warrantless searches under the SWMA are constitutional when applied to a commercial entity operating in a heavily regulated industry, see Commonwealth Dep't of Envtl. Res. v. Blosenski Disposal Serv., 566 A.2d 845 (Pa. 1989), a reasonable jury could find that he was not involved in such an enterprise. Presently, there is no record evidence that Light's property was licensed for any commercial or industrial activity; rather, it was a private farm.  There is circumstantial but disputed evidence that Light may have operated a business on his farm and it is certainly possible that his farm operations were ancillary to his management of rental properties.  In addition, there is no clear evidence that Light held his farm open to the public; rather, it appears that he posted "no trespassing" signs to keep the public at bay.  Nor is there undisputed evidence that the buildings on Light's farm were used in a manner consistent with a heavily regulated industry; rather, they were used to store an eclectic mix of materials, appliances and furnishing for use in Light's rental properties.

Because there is insufficient evidence to demonstrate that Light was acting as a businessman in a heavily regulated industry, a reasonable jury could find that

11

Light's property was not subject to the administrative search exception to the

Fourth Amendment warrant requirement.[4]  Moreover, the law barring random and

extensive searches of such private property was clearly established prior to the

events at issue.  Therefore, qualified immunity will not shield defendants from

these claims.[5]   See Showers v. Spangler, 182 F.3d 165, 173 (3d Cir. 1999); see also

Saucier, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether

a right is clearly established is whether it would be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted.").

---

[4]  If it is ultimately determined that Light was not operating a commercial entity, the fines to which he was subjected for exercising his Fourth Amendment rights may be deemed unconstitutional.  See Camara, 387 U.S. at 532-33 (holding as unconstitutional the state penalization of private citizen who required warrant before allowing administrative inspection).  In addition, a reasonable jury could find that defendants' threats of fines effectively invalidated Light's consent to search.  See Schneckloth, 412 U.S. at 228.

[5]  A current DEP official testified at his deposition that the SWMA empowered him to search any business engaged in the stream of commerce, including any farm or farmer's home, without a warrant.  (Doc. 64, Ex. 3 at 35-36, 37); (see also Doc. 64, Ex. 9 at 99-100) (DEP official explaining that, under SWMA, private home owner may be fined for refusing warrantless entry).  The court finds this disconcerting.  The warrant clause of the Fourth Amendment protects commercial structures as well as private homes.  See Marshall, 436 U.S. at 311-12; Burger, 482 U.S. at 699; see also See v. City of Seattle, 387 U.S. 541, 545 (1967) ("[A]dministrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure.").  Indeed, application of certain provisions of the SWMA to individuals or entities outside of the confines of heavily regulated industry would clearly violate the Fourth Amendment.  See, e.g. 35 PA. CONS. STAT. § 6018.609 ("It shall be sufficient probable cause . . . [for a warrant to issue if the official] has been refused access to the property, building, premise[s], place, book, record or physical evidence, or has been prevented from conducting tests or taking samples.").

## B.    Retaliation

Claims for retaliation require proof that the defendant's actions impacted an interest guaranteed by the First Amendment, and that impairment of that interest was a "substantial or motivating factor" in the defendant's conduct.  Feldman v. Phila. Hous. Auth., 43 F.3d 823, 829 (3d Cir. 1994); see also Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003).  Temporal proximity of the alleged interference to the exercise of the First Amendment interest is probative of the causation element of a retaliation claim.  Marasco, 318 F.3d at 512.  However, unless the "timing of the alleged retaliatory action [is] 'unusually suggestive' of retaliatory motive," additional evidence of causation is required to satisfy this element.  Id. (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).

In the matter *sub judice*, Light alleges that defendants retaliated against him for conversing with the media, appealing the compliance order, and filing the instant lawsuit.  While the record is devoid of evidence of retaliation for speaking with reporters, a reasonable jury could find the timing of the search of Light's barn by Belfanti and Rathfon—occurring immediately following the state-court proceeding—and of the alleged threat by Haws—made immediately upon being informed of the instant lawsuit—is unusually suggestive of retaliatory motive.  See Marshall, 436 U.S. at 311-12; California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972); Brown v. Grabowski, 922 F.2d 1097, 1111-12 (3d Cir. 1990); see also Bristow v. Clevenger, 29 Fed. Appx. 813, 815 (3d Cir. 2002).  As the right to be free from such retaliatory conduct was clearly established at the time of the

events at issue, qualified immunity will not shield defendants from this claim.  See

Millhouse v. Carlson, 652 F.2d 371, 373-74 (1981); Anderson v. Davilla, 125 F.3d 148,

161-63 (3d Cir. 1997).

### C.    Prosecutorial Immunity

When "functioning as integral parts of the judicial process," certain officials

are immune from § 1983 suits.  McArdle v. Tronetti, 961 F.2d 1083, 1084 (3d Cir. 1992).

 Judges, prosecutors, and witnesses are entitled to immunity when they perform

judicial or quasi-judicial acts that are "intimately associated with the judicial

phase" of a proceeding.  Burns v. Reed, 500 U.S. 478, 493 (1991); Ernst v. Child &

Youth Serv., 108 F.3d 486, 494, 496 (3d Cir. 1997).

In the present case, Belfanti and Bartos insist that they are entitled to

prosecutorial immunity for their roles in preparing compliance orders and fines.

Similarly, Haws contends that he is entitled to immunity because he acted only in

the capacity of counsel for DEP.  In the context of the instant motion, the court

finds that defendants' actions did not take place during "an integral part of the

judicial process."  Indeed, Belfanti and Bartos were DEP investigators conducting

an administrative investigation.  See Miller v. City of Philadelphia, 174 F.3d 368,

376 n.6 (3d Cir. 1999) ("[A]bsolute immunity does not extend to investigative or

administrative acts."); Ernst, 108 F.3d at 497 n.7 ([W]e would be unwilling to accord

absolute immunity to investigative or administrative actions taken by . . .

[administrative agency employees] outside the context of a judicial proceeding.").

Haws's alleged threats were made during a private conversation with Light and his

14

counsel.  <u>Id.</u> at 495 (stating that prosecuting attorney not entitled to immunity where actions taken were outside of the judicial process).  As such, defendants are not entitled to prosecutorial immunity.

     **D.    Void For Vagueness**

An enactment violates due process if its prohibitions are "vague or not clearly defined."  <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108 (1972).  For a statute to pass a vagueness challenge it must (1) provide to a person of "ordinary intelligence a reasonable opportunity to know what is prohibited," and (2) provide explicit standards such that the law will not be arbitrarily and discriminatorily enforced.  <u>Id.</u>; <u>Planned Parenthood of Cent. N.J. v. Farmer</u>, 220 F.3d 127, 134-35 (3d Cir. 2000); <u>see also</u> <u>City of Chicago v. Morales</u>, 527 U.S. 41, 52 (1999) ("It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits.").

In the instant matter, Light alleges that the term "waste," as used in the SWMA, is unconstitutionally vague.[6]  (See Doc. 63 at 6).  The court disagrees. The statute specifically delineates unlawful conduct involving six defined categories of waste.[7]  See 35 PA. CONS. STAT. §§ 6018.103, 6018.610.  The regulations implementing the SWMA define and proscribe conduct involving an additional sixteen categories of waste.  See 25 PA. CODE § 271.1; see also Broadrick v. Oklahoma, 413 U.S. 601, 616 n.14 (1973) (stating that administrative regulations may tailor overbroad statute into constitutional confines).  Under these circumstances a person of ordinary intelligence is provided fair notice of the definition of the term

---

[6]  The complaint also avers that a regulation and another statute are void for vagueness.  (See Doc. 22 at 5-6, 9-10 (referring to 25 PA. CODE § 271.413(h) and 35 PA. CONS. STAT. § 6018.103)).  While defendants address the constitutionality of these provisions, plaintiff has not presented any counter-argument or otherwise acknowledged these claims in his brief in opposition.  (Compare Doc. 44 with Doc. 63 at 6).  Abandonment of the position is tantamount to waiver of the claim, and hence summary judgment is appropriate.  See D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999); L.R. 7.6.  Of course, even absent the waiver plaintiff's argument would not succeed.  See Commonwealth v. Packer, 798 A.2d 192, 200 (Pa. 2002) (finding that SWMA provision not void for vagueness); see also Blosenski, 566 A.2d at 848 (warrantless requirement not void for heavily regulated industry).

[7]  The SWMA classifies waste as agricultural, food processing, hazardous, municipal, residual, and solid.  See 35 PA. CONS. STAT. §§ 6018.103.

"waste" as well as unlawful acts pertaining thereto.[8]  See Commonwealth v. Packer, 798 A.2d 192, 200 (Pa. 2002) ("The SWMA contains standards definite enough to inform a person of what he or she can and cannot do."); Baumgardner Oil Co. v. Commonwealth of Pennsylvania, 606 A.2d 617, 623 (Pa. Commw. Ct. 1992) ("The SWMA need not specifically list every conceivable type of garbage, refuse, or discarded material in order to inform fully a person that he or she is subject to the SWMA."); see also San Filippo v. Bongiovanni, 961 F.2d 1125, 1136 (3d Cir. 1992) ("Simply because a criminal statute could have been written more precisely does not mean the statute as written is unconstitutionally vague.") (citing United States v. Powell, 423 U.S. 87, 94 (1975)).

**E.     Eleventh Amendment Immunity**

Under the Eleventh Amendment, a state is generally immune from suit brought by a private party in federal court.  See A.W. v. Jersey City Pub. Sch., 341 F.3d 234, 238 (3d Cir. 2003).  The goal of this "sovereign immunity defense" is to prevent the entry of judgments in federal court that must be paid from the coffers

---

[8] To the extent that Light is alleging procedural due process violations, the court concludes that Light was afforded an opportunity for judicial review of the compliance orders that required him to remove the "waste" from his farm.  See Westinghouse Elec. Corp. v. Pennsylvania Dep't of Envtl. Prot., 745 A.2d 1277, 1280 n.1 (Pa. Commw. Ct. 2000) (setting forth court's jurisdiction over EHB appeals). Light chose not to appeal those orders.  Therefore, the procedural due process claim must fail.  See Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) ("A state cannot be held to have violated due process requirements when it has made procedural protections available and the plaintiff has simply refused to avail himself of them."); see also Persico v. City of Jersey City, 67 Fed. Appx. 669, 674 (3d Cir. 2003) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him. . . .).

of a state treasury.  Callahan v. City of Philadelphia, 207 F.3d 668, 670-71 (3d Cir.

2000).  In essence, it prohibits federal courts from considering claims that state

officials have violated state laws in carrying out their official duties.  See

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984); Pa. Fed'n of

Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 325 (3d Cir. 2002).

In the instant matter, Light seeks a determination that conduct of the

Governor of Pennsylvania and the Secretary of the DEP violate state constitutional

provisions.  (See Doc. 21 ¶¶ 6, 20).  This court does not have jurisdiction to hear

these claims.  See Pennhurst, 465 U.S. at 106; Hess, 297 F.3d at 325.  However, the

claims against these defendants for injunctive and declaratory relief to end the

alleged violations of federal law may go forward.  See Hess, 297 F.3d 310, 323; M.A.

ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark, 344 F.3d 335, 344-45 (3d

Cir. 2003); see also Melo v. Hafer, 912 F.2d 628, 635 n.5 (3d Cir. 1990) ("In suits for

injunctive or declaratory relief . . . the Eleventh Amendment does not bar an action

in which a state official is the named party.").

## IV.   **Conclusion**

As the terms of the Solid Waste Management Act are not unconstitutionally

vague, and because the court cannot exercise jurisdiction over alleged state

constitution violations by state officials, defendants' motion for summary judgment

on these claims will be granted.  The motion will otherwise be denied.

An appropriate order will issue.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Date:      September 13, 2005

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN D. LIGHT,** | : | **CIVIL ACTION NO. 1:03-CV-0725** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CHARLES B. HAWS, et al.,** | : | |
| | : | |
| **Defendants** | : | |

### <u>ORDER</u>

AND NOW, this 13th day of September, 2005, upon consideration of

defendants' motion for summary judgment (Doc. 37), and for the reasons set forth

in the accompanying memoranda, it is hereby ORDERED that:

1.  The motion for summary judgment (Doc. 37) is GRANTED in favor of
    defendants and against plaintiff on the claims that the Solid Waste
    Management Act is unconstitutionally vague and that the actions of
    the Governor of the Commonwealth of Pennsylvania and the
    Secretary of the Department of Environmental Protection violate the
    state constitution.  <u>See</u> <u>Pennhurst State School & Hosp. v.
    Halderman</u>, 465 U.S. 89, 106 (1984); <u>Pennsylvania Federation of
    Sportsmen's Clubs, Inc. v. Hess</u>, 297 F.3d 310, 325 (3d Cir. 2002).

2.  The motion for summary judgment (Doc. 37) is otherwise DENIED.

3.  The pretrial and trial schedule in the above-captioned action is
    revised as follows:

    a.  Jury selection shall commence at 9:30 a.m. on
        November 7, 2005, in Courtroom No. 2, Ninth Floor, 228
        Walnut Street, Harrisburg, Pennsylvania.

    b.  Motions in limine and supporting briefs shall be filed on
        or before October 3, 2005.

      c.        Pretrial memoranda shall be filed on or before 12:00 p.m. on October 12, 2005.

      d.        A pretrial conference shall be held at 11:00 a.m. on Wednesday, October 19, 2005, in Courtroom No. 2, Ninth Floor, 228 Walnut Street, Harrisburg, Pennsylvania.

      e.        Proposed voir dire questions shall be filed on or before October 19, 2005.

      f.        Proposed jury instructions shall be filed on or before October 19, 2005.

4.      All other pretrial instructions set forth in prior case management orders shall remain in effect.

 

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge