## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN D. LIGHT,** | : | **CIVIL ACTION NO. 1:03-CV-0725** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CHARLES B. HAWS**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

This is a civil rights action filed under 42 U.S.C. § 1983 by plaintiff John D. Light ("Light") against defendant Charles B. Haws ("Haws"), assistant counsel for the Pennsylvania Department of Environmental Protection ("DEP").[1]  Light also filed suit against other defendants not affected by the present motion.  Light alleges that violations of the First, Fourth, and Fourteenth Amendments as well as the Pennsylvania Constitution occurred when Haws enforced DEP laws and regulations against him.  Presently before the court is Haws' motion for summary judgment (Doc. 37) asserting that prosecutorial immunity applies to his actions, rendering him insusceptible to suit.

---

[1]Since the inception of this litigation, Haws left DEP for private practice. (Doc. 84 ¶ 2.)

I.    **Statement of Facts**[2]

This case arises from DEP efforts to enforce provisions of Pennsylvania's

Solid Waste Management Act ("SWMA"), 35 PA. CONS. STAT. §§6018.101–.1003,

against Light.  Light resides on a farm in Lebanon County, Pennsylvania, where he

stores oil, gasoline, antifreeze, appliances, lumber, and other items he retains for

resale and for use in some 190 apartment units he owns.  (Doc. 64, Ex. 1 at 1-2, 9-10;

Doc. 64, Ex. 4 at 9-10, 201-04.)  In 1998, acting on a citizen complaint, DEP instituted

enforcement proceedings under the SWMA to compel removal of the sundry items,

which, according to DEP, constituted waste.  (Doc. 64, Ex. 2 at 6-8, 18; Doc. 44-2 ¶ 3.)

DEP issued an order requiring Light to remove the items on November 20, 2001.

(Doc. 84 ¶ 4; Doc. 86 ¶ 4.)

A.    **Prosecution of Light by Haws**

Haws, as assistant counsel for DEP, initiated proceedings in February 2002

when he filed papers with the Pennsylvania Commonwealth Court to enforce DEP's

order.  (Doc. 44-6 ¶¶ 4, 7-8; Doc. 62 ¶ 25; Doc. 84 ¶ 8.)  That court issued its own order

---

[2]In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, the nonmoving party.  See infra Part II.

The present motion for summary judgment is on remand from the United States Court of Appeals for the Third Circuit with instruction to conduct a more extensive review of the record relating to Haws' assertion that he is entitled to prosecutorial immunity.  As such, only the facts related to Haws' conduct and Light's allegations are included here.  A complete recitation of the facts of this case can be found in the court's opinion on the defendants' first motion for summary judgment (Doc. 69), see Light v. Haws, No. 1:03-CV-0725, 2005 WL 2230026 (M.D. Pa. Sept. 13, 2005).

on April 16, 2002 requiring Light to comply with DEP's mandate.  (Doc. 62 ¶ 26; Doc.

86 ¶ 9.)  On July 19, 2002, Haws accompanied a DEP inspector to  Light's property,

where the inspector evaluated Light's compliance with DEP and Commonwealth

Court orders.  (Doc. 39 ¶ 27-28; Doc. 62 ¶ 27; Doc. 84 ¶ 11; Doc. 86 ¶ 11).  The

inspector reported that Light remained in violation of the orders, and Haws filed a

contempt petition with the Commonwealth Court in early August.  (Doc. 85, Ex. B.)

On September 19, 2002, the court held a hearing on the contempt petition.

(Doc. 84 ¶ 11; Doc. 86 ¶ 11.)  In the courthouse after the hearing, Light's counsel

showed Haws a copy of a federal civil rights complaint, which he planned to file

later that day.  (Doc. 84 ¶ 13; Doc. 86 ¶ 13.)  During the ensuing conversation, Haws

told Light: "We haven't even begun doing the citations or fines."  (Doc. 84 ¶ 13; Doc.

86 ¶ 13 & Ex. 3 at 163, 71.)  Light's counsel asked Haws if his statement was a threat,

to which Haws replied: "It isn't a threat; it's a promise."  (Doc. 84 ¶13; Doc. 86 ¶ 13 &

Ex. 3 at 171-72.)  Haws also told Light to "[w]ait and see what we do now" (Doc. 86 ¶

13 & Ex. 1 at 8) and that "[w]hat goes around comes around" (Doc. 86 ¶ 13 & Ex. 8 at

70).

Over the next two years, Haws accompanied DEP inspectors to Light's

property on three additional occasions when the inspectors evaluated it for

compliance with the Commonwealth Court order.  During the same period, he also

filed numerous documents with the court pertaining to the state of Light's

property.[3]  Finally, on November 30, 2004, Haws, along with a judge of the

Commonwealth Court and Light's counsel, participated in a viewing of Light's

property.  (Doc. 84 ¶ 30; Doc. 85-2 ¶ 16; Doc. 86 ¶ 30.)  Haws filed a certificate with

the Commonwealth Court on January 25, 2005 indicating that Light had complied

with the orders of DEP and the court.  (Doc. 84 ¶ 31 & Ex. A at 10; Doc. 86 ¶ 31.)

The case was dismissed later that year.  (Doc. 84, Ex. A at 11.)

### B.   Procedural History

Light filed this action in April 2003 and an amended complaint (Doc. 21) eight

months later, naming as defendants Haws and other individuals who participated in

DEP enforcement efforts.  Haws filed a motion for summary judgment (Doc. 37) on

January 29, 2005, in which he argued he was entitled to absolute prosecutorial

immunity for his actions.  This court denied his motion on the basis that his threats

against Light on September 19, 2002 occurred outside of his prosecutorial function

and were not protected by immunity.  (Doc. 69 at 14.)  Haws appealed to the United

States Court of Appeals for the Third Circuit, which remanded, instructing that the

immunity calculus required a more detailed examination of Haws' actions in the

record.  The Third Circuit stated: "A meticulous analysis of Haws' actions and

functions on behalf of the DEP is necessary before a determination can be made

whether absolute immunity should attach to any of Light's challenges. . . . Haws is

entitled to a determination by the District Court as to which actions are entitled to

---

[3]A more thorough recount of Haws' actions during this two-year period is set
forth in note 9, *infra*.

absolute immunity." <u>Light v. Haws</u>, 472 F.3d 74, 79, 81 (3d Cir. 2007).  With these directions in mind, this court now considers whether Haws' various actions receive the benefit of prosecutorial immunity.  The parties have fully briefed the issue, which is ripe for decision.

## II.  <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  <u>See</u> FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III.  <u>Discussion</u>

Section 1983 of Title 42 of the United States Code provides a remedy against those who, under color of state law, deprive others of federally protected rights.  <u>See</u> 42 U.S.C. § 1983; <u>City of Okla. City v. Tuttle</u>, 471 U.S. 808, 816 (1985).  On its face, the statute creates no exceptions to the liability it imposes, nor does it speak of

immunity for any individual who might deprive another of civil rights.  See Buckley v. Fitzsimmons, 509 U.S. 259, 267-68 (1993).  Nevertheless, it is well-settled that certain government officials possess immunity from § 1983 liability.  Id. at 268.

## A.    The Standard for Application of Prosecutorial Immunity

Prosecutors receive absolute immunity for acts "integral to the judicial process," including those performed while initiating, prosecuting, and presenting a state's case in a judicial proceeding.[4] Williams v. Consovoy, 453 F.3d 173, 178 (3d Cir. 2006); see also Imbler v. Pachtman, 424 U.S. 409, 431 (1976) (extending absolute immunity to prosecutors when conducting state's case); Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001) (same).  The availability of immunity depends not on the *identity or office* of the individual asserting it, but rather on the *function* served by the act for which it is sought.  Buckley, 509 U.S. at 269 (citing Forrester v. White, 484 U.S. 219, 227 (1988)); Williams, 453 F.3d at 178 (observing that courts apply absolute prosecutorial immunity using a functional approach that focuses on the purpose served by the acts for which immunity is sought); Hughes, 242 F.3d at 125

---

[4]Many of the cases governing prosecutorial immunity arise in the context of criminal prosecution.  Although Haws was involved in DEP enforcement actions rather than in criminal prosecution, he is a prosecutor for purposes of the immunity analysis because of the similarity between these proceedings.  See Light, 472 F.3d at 78; see also Batz v. Economou, 438 U.S. 478, 516-17 (1978) ("[O]fficials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision."); Ernst v. Child & Youth Svcs., 108 F.3d 486, 494 (3d Cir. 1997) (citing Batz, 438 U.S. at 516) ("Where the official claiming immunity occupies a governmental position that did not exist at common law, he may still be entitled to immunity if he performs official functions that are analogous to functions performed by those who were immune at common law.").

(same).  Actions performed in the prosecutor's role as advocate receive absolute

prosecutorial immunity, as do acts performed in preparation "for the initiation of

judicial proceedings or for trial."  <u>Buckley</u>, 509 U.S. at 273; <u>see also</u> <u>Hughes</u>, 242

F.3d at 125 (observing that immunity covers actions such as "initiating and

pursuing a criminal prosecution and presenting the state's case in court"); <u>Lucarelli</u>

<u>v. Norton</u>, No. 4:07-CV-0564, 2007 WL 1799708, at *4 (M.D. Pa. June 20, 2007)

(holding that prosecutorial immunity extends to actions in preparation for judicial

proceedings or trial).  In contrast, merely administrative or  investigative functions,

even if part of the prosecutor's official duties, benefit only from qualified—not

absolute—immunity.  <u>Buckley</u>, 509 U.S. at 273 (citing <u>Burns v. Reed</u>, 500 U.S. 478,

494-96 (1991)) ("A prosecutor's administrative duties and those investigatory

functions that do not relate to an advocate's preparation for the initiation of a

prosecution or for judicial proceedings are not entitled to absolute immunity.");

<u>Williams</u>, 453 F.3d at 178; <u>Hughes</u>, 242 F.3d at 125 ("A prosecutor's administrative

and investigative duties, however, are not immune.").  The prosecutor seeking to

invoke immunity has the burden of establishing its applicability to the actions upon

which the plaintiff bases a claim.  <u>See</u> <u>Burns</u>, 500 U.S. at 486.

     When conferring prosecutorial immunity in a particular case, courts consider

only whether the prosecutor's actions served an advocacy function.  The

prosecutor's subjective motivation has no effect on the availability of immunity.[5]

See Light, 472 F.3d at 80 (observing that personal motivation is irrelevant to

application of absolute immunity); Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir.

1991) ("Consideration of personal motives is directly at odds with the Supreme

Court's simple functional analysis of prosecutorial immunity."); Elozua v. New

Jersey, No. 04-2029, 2006 WL 2403934, at *8 (D.N.J. Aug. 18, 2006); Brison v. Police

Officer Tester, No. CIV.A.94-2256, 1994 WL 709401, at *20 (E.D. Pa. Dec. 21, 1994);

accord Bernard v. County of Suffolk, 356 F.3d 495, 505 (2d Cir. 2004); Elder v.

Athens-Clarke County, 54 F.3d 694, 695 (11th Cir. 1995); Brummett v. Camble, 946

F.2d 1178, 1181 (5th Cir. 1991).

### B.   Application of Prosecutorial Immunity to Haws' Actions

Turning to the case *sub judice*, a review of the record reveals that Haws

engaged in four different types of acts upon which Light predicates his § 1983 claim.

First, Haws filed contempt petitions and certificates of non-compliance against

Light in the Commonwealth Court.  (See, e.g., Doc. 85, Ex. A at 4-10.)  Second, while

---

[5]Light's counsel has cited Beard v. Udall, 648 F.2d 1264 (9th Cir. 1981), for the opposite proposition.  (Doc. 87 at 8.)  Beard held that a prosecutor who "files charges he or she knows to be baseless . . . acts outside the scope of his or her authority and thus lacks immunity."  Id. at 1271.  The United States Court of Appeals for the Ninth Circuit expressly overruled Beard for the holding cited by Light's counsel in Ashelman v. Pope, 793 F.2d 1072 (9th Cir. 1986).  In that case the court explained: "[O]ur prior decisions construed the immunity doctrines too narrowly . . . . Prosecutors are absolutely immune for quasi-judicial activities taken within the scope of their authority.  To the extent that . . . Beard [is] to the contrary, [it is] overruled."  Id. at 1078.  As such, this court will consider the applicability of Beard to the case *sub judice* no further.

in the courthouse after a hearing on one of these petitions, Haws purportedly made threats against Light during which Haws said: "Wait and see what we do now" in addition to other warnings. (See, e.g., Doc. 86 ¶ 13.) Third, Haws entered Light's premises accompanied by DEP inspectors on four separate occasions over a period of two years. (See, e.g., Doc. 85-2 ¶ 4.) Finally, Haws entered Light's property along with Light's counsel and a judge of the Commonwealth Court during a court-ordered viewing of the property. (Doc. 85, Ex. A at 10.) The court will examine these actions to determine whether Haws is entitled to prosecutorial immunity for any or all of them.

### 1.   Activities in the Commonwealth Court

Initiating and shepherding prosecution for illegal conduct forms the quintessence of a prosecutor's advocacy function. Kulwicki, 969 F.2d at 1463-64 (citing Imbler, 424 U.S. at 430-31) ("The decision to initiate a prosecution is at the core of a prosecutor's judicial role."). Because immunity focuses on the *function* performed rather than the *motivation* behind it, personal animus against a defendant will not cause the prosecutor to lose immunity for pursuing a case, even in bad faith. See Imbler, 424 U.S. at 427 (holding that absolute immunity leaves a "genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty" but concluding that anything less than absolute immunity would "disserve the broader public interest" by causing prosecutors to eschew "vigorous and fearless performance" of their law-

enforcement duties); <u>Light</u>, 472 F.3d at 80 (reiterating that prosecutorial motive has no effect on immunity analysis); <u>Kulwicki</u>, 969 F.2d at 1464 (same).

Applying these principles to the instant case, Haws' court-related conduct, including appearing at hearings and filing of papers, receive immunity.  Haws' entry onto Light's property on November 30, 2004 for the purpose of a court-ordered viewing of the premises also receives immunity.  (Doc. 63, Ex. 1 at 7; Doc. 84 ¶ 30; Doc. 85, Ex. A at 10; Doc. 86 ¶ 30).  Both the filing of papers and the court-ordered visit appear on the Commonwealth Court docket and occurred under the authority of the court.  (<u>See generally</u> Doc. 85, Ex. A).  Haws was therefore acting in his prosecutorial capacity by participating in this court proceeding.  Even if Haws performed these actions with animus, as Light contends, such motivation would have no effect on Haws' immunity.  Accordingly, Haws' motion for summary judgment will be granted to the extent Light bases his claims on any actions Haws performed before the Commonwealth Court or during the court-ordered visitation on November 30, 2004.

## 2. <u>Threats to Light and Light's Counsel</u>

While absolute immunity applies to all actions taken to initiate and prosecute a state's case, its scope reaches beyond the courtroom to include any "acts . . . which occur in the course of [the prosecutor's] role as advocate for the State."  <u>Buckley</u>, 509 U.S. at 273.  Various courts that have considered the precise reach of immunity have extended it to negotiating plea bargains, setting court dates, and auguring future prosecution or enforcement proceedings.  <u>See, e.g.</u>, <u>Guttman v. Khalsa</u>, 446

F.3d 1027, 1034 (10th Cir. 2006) (holding that threats of future enforcement action and setting of hearing dates by administrative-agency attorney receive prosecutorial immunity); <u>Myers v. Morris</u>, 810 F.2d 1437, 1446 (8th Cir. 1987) ("[T]hreatening criminal prosecution is within the scope of absolute immunity."), <u>abrogated on other grounds by</u> <u>Burns</u>, 500 U.S. at 483 n.2; <u>McGruder v. Necaise</u>, 733 F.2d 1146, 1148 (5th Cir. 1984) (deciding that use of prosecutorial power to persuade an individual to act in a certain way receives benefit of prosecutorial immunity); <u>Taylor v. Kavanagh</u>, 640 F.2d 450, 452 (2d Cir. 1981) (reiterating that prosecutorial pressuring of witnesses and other trial-preparation activity receive immunity); <u>Hull v. Mallon</u>, No. 00-5698, 2001 WL 964115, at *1 (E.D. Pa. Aug. 21, 2001) (declaring that prosecutor receives immunity against prisoner's allegation that prosecutor drove prisoner into accepting plea bargain); <u>Payson v. Ryan</u>, No. 90-1873, 1992 WL 111341, at *7 (E.D. Pa. May 14, 1992) (holding absolute immunity applies to threats of future prosecution); <u>cf.</u> <u>Light</u>, 472 F.3d at 79 (indicating that mere suggestions of future prosecution receive prosecutorial immunity).  As for in-court advocacy, immunity remains intact even if the prosecutor acts in bad faith.  <u>See</u> <u>Imbler</u>, 424 U.S. at 427 (observing that absolute immunity sometimes shields prosecutors who have committed genuine wrongs).  Hence, pressuring individuals into plea bargains and forewarning them of future prosecution receive the protection of absolute immunity because they are directly connected to the prosecutor's judicial law-enforcement function.  <u>See</u> <u>Imbler</u>, 424 U.S. at 427; <u>Genzler v. Longanbach</u>, 410 F.3d 630, 637 (9th Cir. 2005); <u>Michaels v. New Jersey</u>, 222 F.3d 118, 122 (3d Cir. 2000); <u>Kulwicki</u>, 969

11

F.2d at 1464.  Though such acts may evidence prosecutorial indiscretion, courts have upheld the necessity of immunity because it enables prosecutors to enforce the law to the fullest permissible extent without underlying fear of retaliatory lawsuits for the exercise of prosecutorial discretion.[6]

In Guttman v. Khalsa, the United States Court of Appeals for the Tenth Circuit concluded that threats of future enforcement action by an attorney for an administrative agency receive the protection of immunity.  Guttman, 446 F.3d at 1034.  In that case, the plaintiff, a doctor subject to disciplinary action before a state medical licensing board, sued the prosecutor who advanced the charges against him.  Id. at 1029, 1032-34.  He alleged that the prosecutor had "imposed an impossible deadline for disputing the complaints . . . against him and threatened to file a revocation action unless he responded within the deadline."  Id. at 1034.  The Tenth Circuit affirmed the district court's grant of summary judgment, holding that immunity covered the threats of future enforcement because they "were part of [the defendant's] prosecutorial duties."  Id.

Our sister court for the Eastern District of Pennsylvania reached a similar conclusion in Payson v. Ryan, No. 90-1873, 1992 WL 111341 (E.D. Pa. May 14, 1992).

---

[6]Application of prosecutorial immunity simply shields the prosecutor from § 1983 liability in the prosecutor's individual capacity.  It does not vitiate all remedies.   The aggrieved individual may still be able to maintain a § 1983 claim against the government, receive dismissal of the charges, obtain a writ of habeas corpus, file a complaint against the prosecutor with the state disciplinary board, or seek other remedy.  See Light, 472 F.3d at 78-79; Michaels, 222 F.3d at 122; Kulwicki, 969 F.2d at 1464.

In that case, an assistant district attorney became aware, through both private and official channels, of potential criminal activity by a local contractor, who had allegedly accepted payment for residential remodeling work but failed to complete the jobs.  Id. at *1.  The attorney, acting in his official capacity and through lawful means, sent the contractor a letter threatening criminal prosecution if the contractor did not complete the remodeling work for his customers.  Id. at *2-*3. After charges were filed and later dropped, the contractor sued the prosecutor under § 1983.  Id. at *1.  The Eastern District granted summary judgment for the prosecutor, holding that the threats of prosecution served the prosecutor's advocacy function and received immunity.[7]  Id. at *7 ("[A] prosecutor is acting in the role of the state's advocate . . . when he threatens prosecution.").  Prosecutorial immunity therefore extends beyond courtroom activities and includes threats of future prosecution made in an attempt to force compliance with applicable law.

In the instant case, Haws, Light, and Light's counsel engaged in a conversation following a contempt hearing on September 19, 2002 during which Haws stated:  "We haven't even begun doing the citations or fines," indicating that DEP would levy fines against Light unless he complied with the enforcement orders of DEP and Commonwealth Court.  (Doc. 84 ¶ 13; Doc. 86 ¶ 13 & Ex. 3 at 163, 71.)

---

[7]The Eastern District also reached a similar conclusion in prisoner cases in which the plaintiffs alleged they had been pressured into plea bargains by district attorneys.  The court concluded that prosecutors receive immunity for plea bargain negotiations as well as prosecution.  See Hull, 2001 WL 964115, at *1; Lopa v. Kane, No. CIV.A.94-1628, 1994 WL 165226, at *1 (E.D. Pa. Apr. 28, 1994).

Light's counsel asked if Haws' statement was a threat, and Haws replied: "It isn't a threat; it's a promise." (Doc. 42 Doc. 84 ¶13; Doc. 86 ¶ 13 & Ex. 3 at 171-72.)  Haws also said: "Wait and see what we do now," (Doc. 86 ¶ 13 & Ex. 1 at 8) and "What goes around comes around," (Doc. 86 ¶ 13 & Ex. 8 at 70).

Stripping away the emotional language in which the conversation is couched, it appears that Haws simply informed Light that if Light failed to comply with DEP and Commonwealth Court orders, DEP would assess fines and issue citations as permitted by the SWMA and DEP regulations.  The statements indicate that Light's continued non-compliance would be met by enforcement action through legal means, and the record contains no indication that Haws ever threatened Light with enforcement mechanisms that, if performed, would have been illegal.  Haws' statements simply highlight the possibility of future prosecution, akin to the actions upheld by the Tenth Circuit in <u>Guttman</u> and the Eastern District in <u>Payson</u>.

Light may have found Haws' representations disconcerting and worrisome, as most individuals facing regulatory enforcement likely would.  The text of the conversation suggests that it may have been heated, and Light may have even perceived animus on the part of Haws.  Personal motivation and charged discussion have no bearing on the immunity analysis, however.  <u>Light</u>, 472 F.3d at 80.  The statements were simply warnings of future lawful enforcement action.  They occurred "in the course of [Haws'] role as an advocate for the State" and are entitled to prosecutorial immunity.  <u>Buckley</u>, 509 U.S. at 273.  Accordingly, Haws'

motion for summary judgment will be granted to the extent that Light bases his claims on Haws' statements on September 19, 2002.

**3.**   **Entry onto Light's Property Accompanied by DEP Inspectors**

The shield of absolute immunity applies with equal strength to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial." Buckley, 509 U.S. at 273.  Nevertheless, the protection is not limitless, and "[t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for . . . clues and corroboration . . . on the other hand." Id.  The latter type of conduct includes pre-charge evidence-gathering and other investigative activities similar to the duties of police officers and detectives. See Kulwicki, 969 F.2d at 1465.

By contrast, actions such as solicitation and review of evidence for use in prosecutorial proceedings are shielded by absolute immunity. See id. (citing Hunt v. Jaglowski, 926 F.2d 689, 693 (7th Cir. 1991)) ("Evidence obtained at or after the filing is likely to be connected with an existing prosecution."); see also Rose v. Bartle, 871 F.2d 331, 344 (3d Cir. 1989) (holding that solicitation of testimony for use in grand jury proceedings is protected).  "[O]btaining, reviewing, and evaluating" evidence in preparation for the prosecutor's judicial functions are likewise immune. See Imbler, 424 U.S. 431 n.31 (observing that preparation for court proceedings requires review and evaluation of evidence); see also Buckley, 509 U.S. at 273 (holding that "evaluating evidence and interviewing witnesses" in preparation for

15

trial receive immunity); <u>Kulwicki</u>, 969 F.2d at 1465 (stating that post-indictment evidence-gathering will likely receive prosecutorial immunity).  While not determinative, actions by a prosecutor after proceedings have commenced are more likely to serve an advocacy function, and hence be immune, than are pre-charge activities.  <u>See</u> <u>Donohue v. Gavin</u>, 280 F.3d 371, 377 n.15 (3d Cir. 2002) (quoting <u>Kulwicki</u>, 969 F.2d at 1465); <u>Schrob v. Catterson</u>, 948 F.2d 1402, 1415 (3d Cir. 1991) (observing that certain prosecutorial actions, such as obtaining a search warrant, receive immunity after filing of a criminal complaint but not before).

In the present case, Haws' participation in these proceedings occurred after DEP had already issued a compliance order against Light.  (Doc. 84 ¶¶ 3-5; Doc. 85-2 ¶ 2; Doc. 86 ¶¶ 3-5.)  In fact, DEP first investigated Light's compliance with the SWMA in 1998, long before Haws' involvement in the case.  (Doc. 84 ¶ 11; Doc. 86 ¶ 11.)  Haws' visits to Light's property were integrally connected to the enforcement proceedings.  Each visit occurred near a court appearance or filing deadline in the Commonwealth Court, before which Haws was required to discuss the then-current state of Light's property or to examine witnesses about it.

A complete review of the record reveals a pattern of conduct in which Haws would accompany a DEP inspector evaluating Light's property, the inspector would file a report describing Light's non-compliance with court orders, and Haws would file documents or attend hearings, informing the court about Light's lack of compliance.  For example, Haws accompanied DEP inspector Robert Belfanti

("Belfanti")[8] on an inspection of Light's property on July 19, 2002. (Doc. 84 ¶ 10;

Doc. 86 ¶ 10.) On July 29, Belfanti filed his report indicating that Light had not

complied with outstanding Commonwealth Court orders. (Doc. 85, Ex. B.)

Following the report, Haws filed a contempt petition based on Light's failure to

comply. (Doc. 85, Ex. A at 4.) Reviewing each of Haws' three other visits reveals a

similar pattern of conduct.[9]

---

[8]Belfanti's official title was Solid Waste Specialist. (Doc. 86, Ex. 5 at 13.) He
has since left DEP. (Id. at 12.)

[9]The temporal proximity of Haws' visits to his in-court activities suggests that
he visited the property to prepare for his court appearances. Consequently, the
court will describe the sequence of events in greater detail, beginning with the
Commonwealth Court order that served as a catalyst for Haws' series of visit to the
Light property.
    On April 16, 2002, the Commonwealth Court issued an order ("4/16/02 order")
requiring Light to comply with a DEP enforcement order previously issued on
November 20, 2001 ("11/20/01 order"). (Doc. 84 ¶¶ 3, 9; Doc. 86 ¶¶ 3, 9.)
    Haws' first visit to Light's property occurred on July 19, 2002. (Doc. 84 ¶ 10;
Doc. 85-2 ¶ 8; Doc. 86 ¶ 10.) He accompanied DEP inspector Robert Belfanti on this
inspection. (Doc. 84 ¶ 10; Doc. 85-2 ¶ 8; Doc. 86 ¶ 10.) The purpose of Belfanti's
inspection was to ascertain Light's compliance with the 11/20/01 and 4/16/02 orders.
(Doc. 85, Ex. B.) On July 29, 2002, Belfanti filed his completed report of that
inspection, which indicated that Light had failed to comply with the 11/20/01 and
4/16/02 orders. (Id.) On August 6, 2002, Haws filed a contempt petition with the
Commonwealth Court based on the then-current state of Light's property. (Doc. 85,
Ex. A at 4.) After a continuance, a hearing was held on September 19, 2002, when
the court deferred consideration of the petition and issued another order ("9/19/02
order") directing Light to remedy the situation on his property. (Doc. 84 ¶ 12; Doc.
85, Ex. A at 4; Doc. 86 ¶ 12)
    Haws' second visit occurred on February 6, 2003, again accompanied by
Belfanti. (Doc. 84 ¶ 15; Doc. 85-2 ¶ 11; Doc. 86 ¶ 15.) The purpose of Belfanti's
inspection was to evaluate Light's compliance with the 9/19/02 order. (Doc. 85, Ex.
C.) On February 19, 2003, Belfanti filed his report, indicating continued non-
compliance. (Id.) On March 24, 2003, approximately one month after Belfanti filed
his report, Haws filed a second contempt petition. (Doc. 85, Ex. A at 5.)

The court held a hearing on the petition on May 1, 2003, at which it held Light in contempt for violating the 4/16/02 and 9/19/02 orders. (<u>Id.</u> at 5-6.) The contempt order required that Light be incarcerated on a daily basis from 6:00 p.m. to 8:00 a.m. until DEP filed a certificate of compliance indicating Light had complied with the court's orders. (<u>Id.</u> at 6.) The contempt sanctions were not executed until January 12, 2004, after Light received several additional months during which to purge his contempt. (<u>Id.</u> at 8; <u>see also</u> Doc. 84 ¶¶ 17, 19; Doc. 86 ¶¶ 17, 19.) On February 17, 2004, Light filed an application to vacate the contempt order. (Doc. 85, Ex. A at 8.)

Haws' third visit to Light's property then occurred February 23, 2004. Haws was accompanied by DEP inspector Todd Miller and one other DEP representative. (Doc. 84 ¶ 23; Doc. 85, Ex. D; Doc. 85-2 ¶ 12; Doc. 86 ¶ 23.) Miller's task was to determine whether Light had complied with the 4/16/02 and 9/19/02 orders as well as two similar, subsequent orders. (Doc. 85, Ex. D.) Miller's report, filed the same day, indicated continued non-compliance by Light. (<u>Id.</u>) Two days after the inspection, Haws filed an answer to Light's application to vacate the contempt order. The court held a hearing on the matter on March 18, 2004. (Doc. 85, Ex. A at 8; Doc. 84 ¶ 24; Doc. 86 ¶ 24.) The court denied Light's application to vacate. (Doc. 85, Ex. A. at 9.) The court eventually lifted the contempt sanction in April, when Light filed a remedial plan for his property to which DEP assented. (<u>Id.</u>)

On September 22, 2004 Haws filed a certificate of Light's continued non-compliance with the court orders. (<u>Id.</u> at 10; Doc. 84 ¶ 27; Doc. 86 ¶ 27.) Haws' fourth visit to Light's property then occurred on October 14, 2004, again accompanied by Miller. (Doc. 84 ¶ 29; Doc. 85-2 ¶ 14; Doc. 86 ¶ 29.) Miller's purpose was to determine Light's compliance with a total of six orders, including the 11/20/01, 4/16/02, and 9/19/02 orders. (Doc. 85, Ex. E.) Miller's report, filed the same day, indicated several continuing violations. (<u>Id.</u>) On November 9, 2004, a month after Haws' visit, Haws, Light's counsel, and a Commonwealth Court judge participated in a court-ordered viewing of the property. (<u>Id.</u>, Ex. A at 10.)

On January 25, 2005, Haws filed a certificate of compliance with the Commonwealth Court indicating that Light had complied with the agreed-upon remedial plan, and the court dismissed the case two months later. (<u>Id.</u>, Ex. A at 10-11.)

Each of Haws' visits to Light's property occurred near a time when Haws either filed a paper with or represented DEP before the Commonwealth Court. On several occasions, the lapse of time between Haws' visit and his advocacy in court was a week or less. The need for Haws to represent accurately Light's state of compliance suggests that he conducted the visits in his role as advocate for DEP. Though he might have been able to gain sufficient knowledge for this task by reading DEP inspectors' reports, his duty to make truthful representations to the Commonwealth Court and to examine witnesses thoroughly justify the visits as a part of Haws' prosecutorial functions.

Haws confirmed the purpose of this pattern, stating that he found it helpful to have personally surveyed the sites about which witnesses testified in court, particularly when examining and cross-examining them.  (Doc. 85-2 ¶ 5.)

During these visits Haws never engaged in the type of conduct one would expect an investigator to perform.  (See, e.g., Doc. 84 ¶ 37; Doc. 86 ¶ 37.)  The parties agree that while on Light's property, Haws remained in the presence of DEP inspector at all times.  (Doc. 84 ¶ 38; Doc. 86 ¶ 38.)  They also agree that Haws merely observed the scene.  He never took notes, collected samples, prepared documents, or engaged in other typically investigative activity.  (Doc. 84 ¶ 37; Doc. 86 ¶ 37.)  The DEP inspector accompanying Haws invariably filed an inspection report after each visit, but the record contains no indication that Haws ever did so. In fact, the only paperwork Haws ever filed relating to Light's property was submitted to the Commonwealth Court.

Further, Haws stated that his usual practice was to survey a site that was the subject of litigation in which he represented DEP.  (Doc. 84 ¶ 36.)  The deposition of Belfanti, taken by Light's counsel, confirms this.  While Haws sometimes accompanied Belfanti on Belfanti's inspections of the Light property and others, Belfanti indicated that Haws never performed inspections by himself.  (Doc. 86, Ex. 5 at 265-66.)

The court concludes that these facts cumulatively indicate Haws visited Light's property to prepare for Commonwealth Court hearings during which he apprised the court of its then-present status and examined witnesses about the

19

property.  He performed these acts in his prosecutorial function on behalf of DEP,

not as an investigator.  Accordingly, Haws' motion for summary judgment will be

granted to the extent that Light bases his claim on Haws' four visits to his property.

**IV.**   **Conclusion**

Because all of Haws' actions upon which Light bases his § 1983 claim

occurred while Haws was functioning as a DEP prosecutor, prosecutorial immunity

leaves him unamenable to suit.  The motion for summary judgment will be granted.

An appropriate order follows.


　　　　　　　　　　　　　　　　　 S/ Christopher C. Conner　　
　　　　　　　　　　　　　　　　CHRISTOPHER C. CONNER
　　　　　　　　　　　　　　　　United States District Judge


Dated:　　　　October 5, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN D. LIGHT,** | : | **CIVIL ACTION NO. 1:03-CV-0725** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CHARLES B. HAWS,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 5th day of October, 2007, upon consideration of the motion

for summary judgment (Doc. 37) of defendant Charles B. Haws, and for the reasons

discussed in the accompanying memorandum, it is hereby ORDERED that:

1.  Defendant's motion (Doc. 37) is GRANTED.

2.  The Clerk of the Court is directed to defer entry of judgment until the
    conclusion of this case.


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge